**Anil B. DEOLALIKAR**

v.

**MURLAS COMMODITIES, INC.**

**Civ. A. No. 84–1953.**

United States District Court,
E.D. Pennsylvania.

Nov. 19, 1984.

Ralph David Samuel, Philadelphia, Pa., for plaintiff.

John J. Barrett, Jr., Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

This matter comes before the court on defendant Murlas Commodities, Inc.'s motion to dismiss and/or transfer this action to a different venue.

The defendant, an Illinois corporation, is engaged in the business of commodities

14

futures trading, an often risky and volatile investment proposition that involves the buying and selling of such diverse products as soybeans, corn, foreign currency, heating oil and lumber.

Plaintiff has brought suit charging defendant with violations of 18 U.S.C. § 1961 *et seq.*, commonly known as the Racketeer Influenced and Corrupt Organizations Act (RICO), for alleged patterns of racketeering activity involving an investment account he held with Murlas Commodities, Inc. The plaintiff also has stated a cause of action under a theory of common law fraud.

The jurisdiction of this court is invoked under 18 U.S.C. § 1964(c) of the RICO Act with pendent jurisdiction over plaintiff's state common law fraud claim being asserted too.

A brief recitation of the course of conduct between the parties may be instructive in understanding the resolution of these motions.

Mr. Deolalikar, the plaintiff, received a telephone solicitation from Murlas of Miami, Inc.[1] inquiring of his interest in opening a commodities investment account with the defendant corporation. The plaintiff agreed to open an account and the proper agreement papers were prepared for his signature with $10,000 being initially deposited into the account. Both sides agree up to this point to these facts, but take issues as to what occurred next. Suffice it to say, Mr. Deolalikar's account suffered a $3,000 loss through a series of investments.

Troubled by these losses, the plaintiff contacted the defendant's representatives to complain about their trading strategies. The conversation ended with the plaintiff investing an additional $5,000 to bring his current account to $12,000 and total investment to $15,000.

The plaintiff notified the defendant of his intention to leave the country for a short hiatus and informed them that power of attorney would be conferred on a relative to represent his interest. The plaintiff also wrote letters of instructions on investment strategy. Upon returning to the United States approximately two months later plaintiff's account balance had been reduced to $652.42. These transactions, which resulted in losses, are the basis for plaintiff's claims against Murlas.

In order to open an account, a customer is required to sign an agreement which contains the rights, duties and obligations of both parties. One of the many terms contained within the agreement was a forum selection clause which specifies that any action against Murlas will be brought only in a court sitting in Chicago, Illinois. The agreement also contained a provision that allowed Murlas to settle any disputes with Mr. Deolalikar by use of an arbitration proceeding.[2]

Murlas has asserted the forum selection clause in petitioning this court to transfer the matter to the Federal Court for the Northern District of Illinois.[3] Mr. Deolalikar raises three arguments why this motion to transfer should be denied. The first point is that the customer agreement, which constitutes a contract between the parties, was never accepted by Murlas. The second argument deals with the validity of enforcing a forum selection and arbitration clause when a federal claim under the RICO act is alleged. The last point centers on the notion that the forum selection and arbitration clauses are not enforceable since they run contrary to existing federal regulations governing commodities disputes.

DISCUSSION

■ It is a well established principal that parties to a contract may stipulate in ad-

---

1. Murlas of Miami, Inc. acted as brokers for defendant.

2. The arbitration provision has not been invoked by Murlas and is not an issue before this court.

3. Defendant has also moved to dismiss the complaint for failure to state a claim upon which relief may be granted. The merits of that motion need not be reached by this court if their motion to transfer is granted.

vance to submit their disputes to a given court in a specific jurisdiction. *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1971). Commonly known as "forum selection", this type of provision has long been a fixture in commercial transaction contracts.[4]

Thus, the threshold question the court is presented with is whether it should exercise its jurisdiction to do more than give effect to the legitimate manifestation freely negotiated by the parties. *Bremen, supra*, 12, 92 S.Ct. at 1914.

■ Forum selection provisions have been upheld absent some showing that its enforcement would be unreasonable, unfair or unjust. *Anastasi Bros. v. St. Paul Fire & Marine Ins.*, 519 F.Supp. 862 (E.D.Pa. 1981); *Stop-A-Flat Corp. v. Electra Start of Michigan*, 507 F.Supp. 647 (E.D.Pa. 1981). While it is true that parties may not enter into an agreement which prevents a court from asserting its inherent jurisdiction over the matter, nevertheless, "a court in which venue is proper and which has jurisdiction should decline to proceed with the case when the parties have freely agreed that litigation shall be conducted in another forum ..." *Central Contracting Co. v. C.E. Youngdahl & Co., Inc.*, 418 Pa. 122, 209 A.2d 810, 816 (1965).

Our first inquiry shall determine if enforcement of this provision is unreasonable, unfair or unjust.

The plaintiff has not alleged that he was induced by any act of fraud or misrepresentation by the defendant or its brokers to enter into the agreement. The forum selection provision is printed in bold type in contrast to the other provisions printed in a normal type face. This provision is directly above the signature of plaintiff on the agreement. Mr. Deolalikar has not alleged that this agreement was not entered into at arms length transaction. Nor will enforcement of the forum selection clause deny the plaintiff his day in court, an important consideration weighed by the Supreme

Court in *Bremen, supra*, 407 U.S. at 18–19, 92 S.Ct. at 1917–1918.

By transferring this matter to another federal district court, plaintiff will not be shouldered with an unfair disadvantage in vindicating his rights. The court in that district is certainly competent to hear this case. Illinois attorneys will be able to provide effective counsel and since the center of commodity trading is in Chicago, the plaintiff should have a plethora of expert witnesses to choose from to present his position.

■ Courts within our jurisdiction have consistently held that the inconvenience imposed by attending trial in another jurisdiction is not a serious enough hardship to deny enforcement of the provision. "Mere inconvenience or additional expense is not the test of unreasonableness, since it may be assumed that the plaintiff received under the contract consideration for these things." *Central Contracting Co., supra*, 209 A.2d at 816; *Central Contracting Co., Inc. v. Maryland Casualty Co.*, 367 F.2d 341 (3d Cir.1966) (quoting from *Central Contracting Co., supra* ).

■ Since the plaintiff has not met the burden of proving that the agreement was induced by fraud or that he will be denied his day in court or that enforcement of it would unreasonably force him to litigate in another jurisdiction, the forum selection clause is a valid exercise of a contractual right.

Plaintiff contends that there are three reasons why in spite of its validity, the provision should not be enforced.

I. The Customers Agreement Was Never Accepted by Murlas and Therefore Is Not Binding Between the Parties.

■ We find no support for this proposition either in law or in fact. Paragraph 26 of the agreement states that the laws of the State of Illinois shall govern the construction, interpretation and enforcement of this agreement, and that "the agreement shall not be deemed to be accepted by

---

**4.** *Restatement Second Conflict of Laws* § 80.

Murlas or become a binding contract between customer and Murlas until approved at Murlas' Home Office by Murlas New Accounts Department."

Plaintiff believes that his agreement with Murlas is voidable since no evidence has been found to show that the new accounts department accepted his agreement.[5] The court disagrees with this assessment because Murlas was bound by the terms of the agreement when they began to invest the plaintiff's money during the month of May, 1980.

 The contract provides for this court to look to Illinois law in resolving any interpretation of the agreement. It is well settled in that state that the language of the agreement can govern the mode of acceptance required. *Baltimore & Ohio Southwestern Railroad Co. v. People ex rel. Allen*, 195 Ill. 423, 63 N.E. 262. It is also well accepted law that the performance of a contract can begin by either (1) engaging, within a reasonable time, to perform the contract; (2) by beginning such performance in a way which would bind him to complete it; (3) by actual performance. *Plumb v. Campbell*, 129 Ill. 101, 18 N.E. 790.

When Murlas began to trade using Mr. Deolalikar's funds actual performance of their agreement began. Constructive acceptance occurred at that time and the plaintiff cannot now seek to declare the contract voidable as to provisions he finds onerous.

II. The Arbitration Clause is Contrary to Federal Regulation 17 C.F.R. § 180.3 *et seq.* and a Claim Asserted Under RICO is not Arbitrable.

 Application of the arbitration clause is not an issue before the court because plaintiff chose to file suit in a court of law. Therefore, we need not reach the issue of whether the provisions which restrict the location of arbitration to the City of Chicago is a violation of existing regulations.[6] Nor must we reach the issue of whether an arbitration panel may enforce a claim brought under the RICO Act.

In concluding, the court finds that the forum selection provision is a valid exercise of the parties free will to qualify the method disputes will be settled. By transferring this action to the District Court for the Northern District of Illinois plaintiff's concerns over the arbitration provision are not effected in any manner. The arbitration provision has not been invoked and if defendant were to attempt to invoke it, plaintiff could renew his objection to its enforcement in that court.

For the foregoing reasons, this court will grant defendant's motion to transfer this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). An appropriate Order follows.

### ORDER

AND NOW, this 19th day of November, 1984, upon consideration of defendant Murlas Commodities, Inc.'s motion to transfer and the plaintiff Anil B. Deolalikar's response thereto, it is ORDERED that defendant's motion is GRANTED and this matter is transferred to the United States District Court for the Northern District of Illinois.

BY THE COURT:

---

5. Plaintiff conducted discovery of the documentation surrounding his account and no written acceptance was found.

6. 17 C.F.R. 180.(3)(4)(11) allows the customer the opportunity to select location of the arbitration proceedings from among several major cities in diverse geographic regions.