■ GREGORIS MOTORS, INC., Respondent-Appellant, v NISSAN MOTOR CORPORATION IN U.S.A., Defendant, and CURWOOD PONTIAC-DATSUN, INC., Appellant-Respondent. — In an action to recover damages and for equitable relief for (1) breach of contract, and (2) intentional interference with contractual relations, plaintiff and defendant Curwood Pontiac-Datsun, Inc. (Curwood) cross-appeal from an order of the Supreme Court, Nassau County, dated November 3, 1980, which (1) denied plaintiff's motion for a preliminary injunction, and (2) denied Curwood's cross motion for summary judgment dismissing the complaint. Cross appeal by plaintiff dismissed, without costs or disbursements. The cross appeal was not perfected in accordance with the rules of this court. On the appeal by defendant Curwood, order reversed insofar as appealed from, on the law, with $50 costs and disbursements, the provision denying Curwood's cross motion for summary judgment dismissing the complaint is deleted and the cross motion is granted. An essential element of a cause of action for intentional interference with contractual relations is the intentional procurement of a breach by the defendant (see, e.g., *Israel v Wood Dolson Co.,* 1 NY2d 116, 120; *Lamb v Cheney & Son,* 227 NY 418; Prosser, Torts [4th ed], § 129). Plaintiff's pleadings and motion papers failed to establish, for the purpose of

withstanding a motion for summary judgment, that Curwood procured a breach of the contract between it and defendant Nissan Motor Corporation (Nissan). It is the responsibility of a court to interpret a written instrument *(Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.,* 32 NY2d 285; 4 Williston, Contracts [3d ed], § 601). At bar both parties are in apparent agreement that resort to parol evidence is not necessary to ascertain the meaning of the writing entered into by plaintiff and Nissan. Accordingly, the question is one of law and may appropriately be decided by an appellate tribunal (see *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn., supra)*. The paragraph in the standard Datsun dealer sales and service agreement, which is at the heart of this litigation, in pertinent part provides: "4. Determination of Dealer Representation A. Appointment of Additional Datsun Dealers Subject to any limitation imposed by applicable law, Seller reserves the right to sell.Datsun Products to others and to appoint additional Authorized Datsun Dealers within or without Dealer's Sales Locality. However, Seller agrees that it will not appoint an Authorized Datsun Dealer at a location within Dealer's Sales Locality which is within ten (10) miles driving distance of Dealer's Dealership Location unless·a study made pursuant to Section 4.B demonstrates in the opinion of Seller that: (1) Dealer has not satisfactorily performed its responsibility under Section 3 of this Agreement to actively and effectively promote the sale of Datsun Vehicles; or (2) Dealer has not satisfactorily performed his responsibility under Section 5 of this Agreement to actively and effectively promote the sale of Genuine Parts and Accessories or to provide prompt, efficient and courteous service to owners and users of Datsun Products; or (3) Market or economic conditions demonstrate the need for an additional Authorized Datsun Dealer or Dealers in Dealer's Sales Locality." Interpreting this paragraph in light of the facts and circumstances surrounding execution of the agreement (see *O'Neil Supply Co. v Petroleum Heat & Power Co.,* 280 NY 50, 56), most notably the fact that at that time there was. already a Datsun dealer within a 10-mile radius of the location of plaintiff's dealership, we are of the opinion that this paragraph should be read as not requiring Nissan to conduct a study pursuant to section 4.B when that existing dealer relocates within the 10-mile radius. Read in this light, the relocation of an existing dealer cannot reasonably be said to be encompassed within the phrase "[appointment of] an Authorized Datsun Dealer at a location within ten (10) miles driving distance of Dealer's Dealership Location." Plaintiff has not established the intentional interference with a contract that is the gravamen of the tort. Accordingly, Curwood's cross motion for summary judgment dismissing the complaint should have been granted. Mangano, J.P., Gibbons, Gulotta and O'Connor, JJ., concur.