SONY ERICSSON MOBILE COMMUNICATIONS USA, INC., PLAINTIFF v.
AGERE SYSTEMS, INC., DEFENDANT

COA08-525

(Filed 3 March 2009)

### Venue— New York—forum selection clause

The trial court did not err in an unfair and deceptive trade practices, fraud, and negligent misrepresentation case by dismissing plaintiff's complaint against defendant based on improper venue because: (1) the parties' Master Development License Agreement (MDLA) forum selection clause specified that disputes between the parties would be governed by New York law, and the parties agreed to apply New York law to the question of whether the forum selection clause appeared in an enforceable contract; (2) plaintiff's claim arises in connection with the MDLA, and the forum selection clause is applicable to plaintiff's complaint; (3) the MDLA was an enforceable contract setting out the ground rules for the parties to negotiate possible Statements of Work (SOW) and articulated agreed-upon procedures, practices, and terms applicable to SOW the parties might execute in the future; (4) plaintiff failed to articulate how open terms in a hypothetical future SOW would make the terms of the MDLA itself unenforceable; and (5) both parties are sophisticate multinational corporations, and if either party wanted enforcement of the MDLA or its forum selection clause to depend on execution of SOW, such a term would have been stated in the MDLA.

Appeal by Plaintiff from order entered 27 August 2007 by Judge John R. Jolly, Jr., in Wake County Superior Court. Heard in the Court of Appeals 12 January 2009.

*Ellis & Winters LLP, by Jonathan D. Sasser, Alex J. Hagan, Thomas H. Segars, and Stephen D. Feldman, for Plaintiff-Appellant.*

*McGuireWoods LLP, by Christian M. Kennedy, Andrew E. Kristianson and Mark E. Anderson, for Defendant-Appellee.*

BEASLEY, Judge.

Plaintiff appeals from an order dismissing its complaint against Defendant for improper venue. We affirm.

SONY ERICSSON MOBILE COMMUNICATIONS USA, INC. v. AGERE SYSTEMS, INC.

[195 N.C. App. 577 (2009)]

The parties are multi-national corporations engaged in the production and distribution of products and components used for wireless digital communication. Plaintiff (Sony Ericsson Mobile Communications USA, or SEMC) is a corporate subsidiary of Sony Ericsson Mobile Communications AB (SEAB). The Defendant named in Plaintiff's complaint, Agere Systems, Inc., formerly existed as an independent provider of products used in digital data storage and communications devices. After Plaintiff filed its complaint, Defendant became a subsidiary of LSI Corporation (LSI), also a multinational corporation in the digital technology business.

In 2004 Plaintiff planned to improve its wireless devices and needed a supplier of digital components. The parties explored the possibility that Defendant would supply the necessary components, and in June 2005 SEAB and Defendant signed a Master Development and License Agreement (MDLA). The MDLA set out terms and conditions for negotiations and commercial transactions, including the terms governing the parties' possible execution of work orders. The MDLA also contained a mandatory forum selection clause stating in relevant part that:

> This [MDLA] and any Statement of Work shall be governed by and construed in accordance with the laws of the State of New York[.] . . . The Parties agree to (i) request that any dispute or claim arising out of or in connection with this Master Agreement, or the performance, breach or termination thereof be subject to the jurisdiction of the state and federal courts located in New York and (ii) to the extent such courts accept jurisdiction, to submit such matters exclusively to such courts. . . .

On 6 December 2006 Plaintiff filed suit against Defendant, alleging that Defendant had misrepresented its product development schedule and that Plaintiff's reliance on these misrepresentations had caused Plaintiff to incur substantial damages. Plaintiff sought damages for unfair and deceptive trade practices, fraud, and negligent misrepresentation. The case was designated a mandatory complex business case, pursuant to N.C. Gen. Stat. § 7A-45.4 (b), and was assigned to Judge John R. Jolly, Jr.

In February 2007 Defendant moved to dismiss Plaintiff's complaint for improper venue, under N.C. Gen. Stat. § 1A-1, Rule 12(b)(3). Defendant argued that the MDLA's forum selection clause required that the case be tried in New York. On 27 August 2007 the trial court

SONY ERICSSON MOBILE COMMUNICATIONS USA, INC. v. AGERE SYSTEMS, INC.

[195 N.C. App. 577 (2009)]

granted Defendant's motion and dismissed Plaintiff's claim for improper venue. From this order, Plaintiff has appealed.

### Standard of Review

Preliminarily, we note that the MDLA's forum selection clause specifies that disputes between the parties will be governed by New York law, and that the parties agreed to apply New York law to the question of "whether the forum selection clause appears in an enforceable contract." Accordingly, we have cited New York case law when appropriate.

This appeal requires our interpretation of the forum selection clause and the MDLA, issues of law that are reviewed *de novo*. *See, e.g., Gulf Ins. Co. v. Transatlantic Reinsurance Co.*, 13 A.D.3d 278 279, 788 N.Y.S.2d 44, 45 (2004) (applying a *de novo* standard of review where trial court "interpreted a contract provision . . . as a matter of law") (citation omitted). " 'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Appeal of The Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)) (citation omitted).

"The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent 'The best evidence of what parties to a written agreement intend is what they say in their writing' Thus, a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569, 780 N.E.2d 166, 170 (2002) (quoting *Slamow v. Del Col*, 79 N.Y.2d 1016, 1018, 594 N.E.2d 918 (1992) (internal citations omitted)).

---

Plaintiff argues that the trial court erred by dismissing its claim for improper venue, on the grounds that the mandatory forum selection clause in the MDLA is unenforceable. We disagree.

The MDLA's forum selection clause states that it applies to "any dispute or claim arising out of or in connection with this Master Agreement, or the performance, breach or termination thereof[.]" Section 1.1 of the MDLA sets out its scope and stated purpose as follows:

> 1.1 This document, herein called the "Master Agreement," comprises the general terms and conditions under which

SONY ERICSSON MOBILE COMMUNICATIONS USA, INC. v. AGERE SYSTEMS, INC.

[195 N.C. App. 577 (2009)]

1.1.1 [Defendant] may develop and license Technology Solutions to SEAB and its Affiliates ("SEMC");

1.1.2 [Defendant] may provide services and development tools to SEMC; and

1.1.3 SEAB and its Affiliates and [Defendant] (each individually a "Party", or collectively, "Parties") may discuss project roadmaps, strategies, business plans, technological alternatives or other short or long-term issues.

Plaintiff's complaint asserts that during the parties' negotiations Defendant misrepresented the status of its progress on certain digital components. These allegations pertain to the terms and conditions for the parties to "discuss project roadmaps, strategies, business plans, technological alternatives or other short or long-term issues." We conclude that Plaintiff's claim arises "in connection with" the MDLA, and that the forum selection clause is applicable to Plaintiff's complaint.

Plaintiff does not dispute the general enforceability of forum selection clauses. "[I]t is now recognized that parties to a contract may freely select a forum which will resolve any disputes over the interpretation or performance of the contract. Such clauses are *prima facie* valid and enforceable unless shown by the resisting party to be unreasonable[.] Forum selection clauses are enforced because they provide certainty and predictability in the resolution of disputes, particularly those involving international business agreements[.]" *Brooke Group v. JCH Syndicate* 488, 87 N.Y.2d 530, 534, 663 N.E.2d 635, 637-38 (1996) (citations omitted).

Thus, "to set aside such a clause, a party must show either that enforcement would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, such that a trial in [New York] would be . . . inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court[.]" *Hirschman v. National Textbook Co.*, 184 A.D.2d 494, 584 N.Y.S.2d 199, 200 (1992) (citations omitted). In the present case, Plaintiff does not argue that the forum selection clause is unreasonable, unjust, or was fraudulently procured. Nor does it contend that a trial in New York would be inconvenient. Indeed, after its claim was dismissed in North Carolina, Plaintiff filed essentially the same claim in New York, naming the Defendant's successor in interest as Defendant in the new complaint.

SONY ERICSSON MOBILE COMMUNICATIONS USA, INC. v. AGERE SYSTEMS, INC.

[195 N.C. App. 577 (2009)]

Plaintiff's sole basis for invalidating the forum selection clause is its assertion that the MDLA is not an enforceable contract. "[T]he parties would not be bound by choice of law and forum provisions contained in a contract that is otherwise invalid[.]" *Indosuez Int'l Fin. B.V. v. National Reserve Bank*, 279 A.D.2d 408, 408, 720 N.Y.S.2d 102, 103 (2001), *aff'd*, 98 N.Y.2d 238, 774 N.E.2d 696 (2002) (citations omitted).

Plaintiff correctly cites the general rule that "definiteness as to material matters is of the very essence in contract law. Impenetrable vagueness and uncertainty will not do[.] . . . [I]t is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable[.] *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 417 N.E.2d 541, 543 (1981) (citation omitted). However, we conclude that the MDLA does not lack material terms essential for its enforcement.

Plaintiff argues that the MDLA is enforceable only in conjunction with a properly executed Statement of Work (SOW), and that, because the MDLA does not include the terms of any specific SOW, it does not constitute a binding agreement. We do not agree. As discussed above, the stated purpose and scope of the MDLA is to set out the "general terms and conditions" governing the parties' negotiations and their possible execution of SOWs. It includes terms addressing invoicing, quality control of products, warranties, intellectual property rights, use of confidential information, termination rights, taxes, etc. The MDLA sets out the ground rules for the parties to negotiate possible SOWs and articulates agreed-upon procedures, practices, and terms applicable to SOWs the parties might execute in the future. As the trial court stated in its order, "the main purpose of the MDLA is to provide 'the general terms and conditions under which' the parties would explore a further relationship . . . the MDLA does not require that a Statement of Work ever be executed."

Plaintiff argues that the MDLA contains numerous material terms that are not resolved, and thus does not represent an enforceable agreement. However, Plaintiff does not cite provisions or terms of the MDLA itself, but only terms of possible SOWs. Plaintiff fails to articulate how open terms in a hypothetical future SOW would make the terms of the MDLA itself unenforceable. We again quote from the trial court's order:

SONY ERICSSON MOBILE COMMUNICATIONS USA, INC. v. AGERE SYSTEMS, INC.

[195 N.C. App. 577 (2009)]

Though the MDLA may not contain many of the substantive terms of the contemplated ultimate relationship of the parties itself—which appears to be the provision of technological deliverables—none of its own terms remain to be negotiated. . . .

[T]he majority of the MDLA's provisions pertain directly to Statements of Work, should any have been entered. Sony USA argues that this demonstrates that the MDLA's effect depends on a Statement of Work. However, such dormant provisions neither demonstrate a lack of assent to the MDLA's terms nor otherwise provide grounds upon which to negate those provisions of the MDLA that do not pertain directly to Statements of Work, such as the Forum Selection Clause[.]

"To consider the existence of open terms as fatal would be to rule, in effect, that preliminary binding commitments cannot be enforced. That is not the law." *Teachers Ins. & Annuity Asso. v. Tribune Co.*, 670 F. Supp. 491, 499 (S.D.N.Y. 1987). In the instant case, the MDLA contains numerous indicia of the parties' intent to be bound by its terms, including the following: (1) the MDLA has an "effective date" set out in the MDLA's preamble; (2) the MDLA § 3.5 states that future purchase orders will not alter the parties' "rights and obligations" under the MDLA; (3) the MDLA § 19 allows either party to terminate the MDLA upon the other party's "breach" of the MDLA's terms; and (4) the MDLA is signed by a representative of each party who is "empowered to bind" that party.

We also note that both parties are sophisticated multinational corporations. Presumably, if either party wanted enforcement of the MDLA or its forum selection clause to depend on execution of a SOW, such a term would have been stated in the MDLA. "Where, as here, the agreement was negotiated by sophisticated and well-counseled parties, courts are 'extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include,' and 'courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing' " *Worcester Creameries Corp. v. City of New York*, 54 A.D.3d 87, 91, 861 N.Y.S.2d 198, 201 (2008) (quoting *Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 N.Y.3d 470, 475, 807 N.E.2d 876 (2004) (internal quotation marks and citations omitted)).

For the reasons discussed above, we conclude that the trial court did not err by ruling that the MDLA is an enforceable contract,

or by applying its forum selection clause. We conclude that the trial court's order should be

Affirmed.

Chief Judge MARTIN and Judge BRYANT concur.